FILED
SEP 0 9 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN McWEENEY,

    Petitioner,

v.

JIM BARTLETT,

    Respondent.

Civil No. 07-788-AC

FINDINGS AND RECOMMENDATION

ANTHONY D. BORSTEIN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

    Attorney for Petitioner

JOHN R. KROGER
Attorney General
LESTER HUNTSINGER
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

    Attorneys for Respondent,

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Oregon State Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition for Writ of Habeas Corpus and alternative request for evidentiary hearing should be DENIED.

## BACKGROUND

In the early morning hours of July 23, 1995, Eric Badgett struck David Herrick in the head with a baseball bat and killed him during the course of a robbery. Badgett was accompanied by Alvaro Fuentes and Petitioner.

Petitioner and Badgett were together the evening of July 22, 1995, using methamphetamine, alcohol, and marijuana. They met Fuentes at a party. Fuentes was carrying a baseball bat for protection against gang members. Petitioner saw Fuentes with the bat. Around midnight, Petitioner and Badgett decided to leave the party, and agreed to give Fuentes a ride home. Petitioner was driving.

In route to Fuentes's house, the three saw David Herrick staggering down the sidewalk. Fuentes suggested the three should "roll" the drunk Herrick. Petitioner tried to hit Herrick with his car. He was unsuccessful, but was able to eventually box Herrick into a corner with a chain-link fence to his back.

All three got out of the car, Fuentes handed Badgett the bat, and Badgett hit Herrick with the purpose of knocking him out and taking his wallet. Herrick fell to the ground, Petitioner and Badgett rolled him over, and Petitioner took Herrick's wallet out of his back pocket. Badgett took the wallet and gave three dollars to Fuentes. Badgett and Petitioner split the remaining ten dollars.

A Umatilla County grand jury returned three separate indictments charging each of the three assailants with Aggravated Murder, Felony Murder, Intentional Murder, and two counts of Robbery in the First Degree.

In April 1996, the 17-year old Badgett pleaded guilty to Felony Murder and Robbery in the First Degree. In return, he provided a taped statement and agreed to testify, if necessary, in each of the co-defendants' trials. Sentencing was scheduled for September 6, 1996.

On June 24 and 25, 1996, Fuentes's case was tried to the court. Badgett testified, but Petitioner exercised his Fifth Amendment right against self-incrimination. Fuentes's attorney moved for a judgment of acquittal on the Aggravated Murder charge, which the trial judge granted. The trial judge found Fuentes guilty of Felony Murder, Intentional Murder, and two counts of Robbery in the First Degree. Sentencing was scheduled for October 2, 1996.

Counsel for Petitioner filed a motion to dismiss the Aggravated Murder count against him, which was denied. On July 12, 1996, Petitioner agreed to plead guilty to Felony Murder in return for dismissal of the other charges and permission to challenge the constitutionality of the mandatory minimum sentence. Following a colloquy with the court, the trial judge accepted the plea and sentenced Petitioner to 300 months of imprisonment under Measure 11. Badgett and Fuentes were also subsequently sentenced to 300 months.

Petitioner filed a direct appeal challenging the constitutionality of Measure 11. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. McWeeney*, 156 Or. App. 397, 972 P.2d 1228 (1998), *rev. denied*, 329 Or. 358, 994 P.2d 125 (1999).

3 - FINDINGS AND RECOMMENDATION -

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *McWeeney v. Bartlett*, 210 Or. App. 532, 152 P.3d 287, *rev. denied*, 342 Or. 644, 158 P.3d 507 (2007).

On May 29, 2007, Petitioner filed his Petition for Writ of Habeas Corpus in this court. Petitioner alleges he received constitutionally ineffective assistance of counsel when his lawyer failed to advise him of the availability of an affirmative defense to Felony Murder and failed to apprise him of information critical to an informed decision whether to stand trial or plead guilty. Petitioner argues that if this court does not grant the Petition on the existing record, an evidentiary hearing should be conducted and testimony received as to whether trial counsel actually advised Petitioner on the availability of the statutory affirmative defense to Felony Murder.

Respondent argues the state post-conviction court decision denying relief is entitled to deference and Petitioner's claims lack merit. Respondent further argues an evidentiary hearing is not warranted because Petitioner had the opportunity to develop the record in the state court proceeding and failed to do so.

## DISCUSSION

I. **Deference to State Court Decision Denying Relief**

   A. **Legal Standards**

When a petitioner has exhausted his federal claims, this Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

4 - FINDINGS AND RECOMMENDATION -

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied*, 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), *cert. denied*, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (quoting *Clark*, 331 F.3d at 1067), *cert. denied*, 541 U.S. 1037 (2004). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be

5 - FINDINGS AND RECOMMENDATION -

objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929. Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied*, 534 U.S. 1038 (2004). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000).

6 - FINDINGS AND RECOMMENDATION -

### B. PCR Proceeding and Decision

At the PCR trial, the parties offered extensive evidence including deposition testimony of both Petitioner and his trial attorney, the transcript from Fuentes's bench trial, and a video recording and transcript of Badgett's courthouse de-briefing interview. Petitioner also submitted a tape and transcript of a meeting which took place on September 11, 2003, with Petitioner's brother, Daniel McWeeney, and Petitioner's trial attorney and his investigator. In addition, both Daniel McWeeney and Petitioner testified at the PCR trial.

After considering all the evidence before him, the PCR trial judge issued a letter opinion denying PCR relief. The letter opinion stated in pertinent part:

> The Court finds instructive the chronology of events as to the three co-defendants. Badgett plead guilty April 10, 1996 in a negotiated agreement. Badgett agreed to provide a taped statement and to testify, if necessary, in each of the co-defendants' trials. Sentencing for Badgett was set for September 6, 1996. Fuentes went to a bench trial June 24 and 25, 1996. Badgett testified, petitioner exercised his 5th Amendment right against self-incrimination and Fuentes was found guilty of Felony Murder, Intentional Murder and two counts of Robbery in the First Degree. Sentencing was set for October 2, 1996. As an aside, Fuentes was arguably subject to consecutive sentences on the Intentional Murder and Robbery charges. Petitioner plead guilty on July 12, 1996. Petitioner obtained dismissal of four of the five counts in the indictment in exchange for his plea to count 2, Felony Murder. Sentencing was set for September 18, 1996.
>
> Trial counsel did not overstate the risk of the death penalty to petitioner. Trial counsel obtained the best deal of the three co-defendants for petitioner. Trial counsel did review with petitioner the substance of the affirmative defense to Felony Murder. Petitioner today is making a distinction without a difference when he says trial counsel did not discuss the possibility of an "affirmative defense under ORS 163.115" with him. Trial counsel did; the defense was not viable. Petitioner's claims to the contrary are not credible. Finally trial counsel owed no special relationship to Daniel McWeeney when their conversation was surreptitiously recorded eight years after the fact. The focus of the conversation was viewed through the only offense petitioner was convicted of by negotiated plea and given

no weight by the Court. Throughout the pendency of the case, trial counsel's performance clearly satisfied constitutional requirements.

The Court has thoroughly reviewed and considered all the materials before it. Petitioner's request for post-conviction relief is denied. The Court finds from the credible evidence that petitioner has failed to prove by a preponderance of the evidence that his counsel's conduct and defense of him was ineffective and inadequate or that his defense was prejudiced by his counsel's performance. Petitioner has not established a substantial violation of a right guaranteed by the Federal or State Constitution.

Resp. Exh. 149, p.2.

The PCR trial judge subsequently issued formal Findings of Fact and Conclusions of Law which elaborated on his letter opinion:

### FINDINGS OF FACT

1. This Court finds instructive the chronology of events as to the three co-defendants. Badgett plead guilty April 10, 1996 in a negotiated agreement. Badgett agreed to provide a taped statement and to testify, if necessary, in each of the co-defendants' trials. Sentencing for Badgett was set for September 6, 1996. Fuentes went to a bench trial June 24 and 25, 1996. Badgett testified, petitioner exercised his 5th Amendment right against self-incrimination and Fuentes was found guilty of Felony Murder, Intentional Murder and two counts of Robbery in the First Degree. Sentencing was set for October 2, 1996. As an aside, Fuentes was arguably subject to consecutive sentences on the Intentional Murder and Robbery charges. Petitioner plead guilty on July 12, 1996. Petitioner obtained dismissal of four of the five counts in the indictment in exchange for his plea to count 2, Felony Murder. Sentencing was set for September 18, 1996.

2. Trial counsel did not overstate the risk of the death penalty to petitioner. Trial counsel obtained the best deal of the three co-defendants for petitioner. Trial counsel did review with petitioner the substance of the affirmative defense to Felony Murder. Petitioner today is making a distinction without a difference when he says trial counsel did not discuss the possibility of an "affirmative defense under ORS 163.115" with him. Trial counsel did; the defense was not viable. Petitioner's claims to the contrary are not credible.

8 - FINDINGS AND RECOMMENDATION -

3.  Trial counsel owed no special relationship to Daniel McWeeney when their conversation was surreptitiously recorded by Daniel McWeeney eight years after the fact. Daniel McWeeney contacted trial counsel at the most on two occasions during the entire year counsel represented petitioner. The focus of the conversation was viewed through the only offense petitioner was convicted of by a negotiated plea and given no weight by the Court. Throughout the pendency of the case, trial counsel's performance clearly satisfied constitutional requirements.

4.  Trial counsel met with petitioner at least once per week over a one-year time period prior to petitioner entering his plea. Trial counsel hired an investigator and the defense investigator met with petitioner often to review the evidence and to discuss defense theories of the case. Trial counsel reviewed the elements of the charges in the indictment with petitioner. Specifically, trial counsel did explain the definition of Felony Murder to petitioner and petitioner's claim to the contrary is not credible. Trial counsel did thoroughly advise petitioner of all of his available options and defense theories of the case. Petitioner was aware of all of his options prior to entering his plea of guilty.

5.  Trial counsel discussed with petitioner the fact that his co-defendant, Badgett, may testify against him at trial. Trial counsel also discussed with petitioner all of the factual and legal differences between his case and that of his co-defendants.

6.  Trial counsel did not misadvise petitioner regarding the risks of receiving consecutive sentences after a trial. Trial counsel did not tell petitioner that he could receive consecutive sentences on the Felony Murder and Robbery charges. Petitioner did not claim in this post conviction proceeding that he entered his plea because counsel incorrectly advised him regarding the risk of consecutive sentences after a trial.

7.  Trial counsel specifically advised petitioner that he would be sentenced pursuant to Ballot Measure 11. Trial counsel never told petitioner that he would not be sentenced under Ballot Measure 11; trial counsel merely told petitioner that the defense would put forth an argument against the application of Ballot Measure 11. Petitioner clearly understood that he would receive a sentence pursuant to Ballot Measure 11.

## CONCLUSIONS OF LAW

1. Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

2. The Court finds from the credible evidence that Petitioner has failed to prove by a preponderance of the evidence that his counsel's conduct and defense of him was ineffective and inadequate or that his defense was prejudiced by counsel's performance. Petitioner has not established a substantial violation of a right guaranteed by the Federal or State Constitution.

3. Petitioner knowingly, voluntarily and intelligently entered his plea of guilty to Felony Murder.

Resp. Exh. 149, pp. 3-6.

### C. Analysis

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

Where a petitioner has pleaded guilty or no contest on the advice of counsel, the "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The prejudice prong, in turn, requires the petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* at 59; *Lambert v. Blodgett*, 393 F.3d at 980.

The court looks to the factual circumstances surrounding a plea to determine whether the petitioner would reasonably have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001) (while a petitioner need not prove that he would have prevailed at trial in order to establish prejudice under *Hill*, the strength of the prosecution's case should be considered as circumstantial evidence of whether petitioner really would have gone to trial had he received adequate advice from counsel), *cert. denied*, 534 U.S. 1140 (2002). As such, "the strength of the prosecution's case is an indicator of whether the defendant would have accepted a guilty plea offer even if counsel's advice had not been constitutionally deficient." *Brown v. Hill*, 2007 WL 464712 *5 (D. Or. Feb. 7, 2007), *aff'd*, 267 Fed. Appx. 630 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 97 (2008).

Petitioner asserts his trial counsel convinced him to accept a plea to Felony Murder without adequately advising Petitioner of the availability of an affirmative defense. He also asserts trial counsel failed to properly advise him that he faced a minimal risk of conviction of aggravated murder and failed to apprise him of his co-defendant Fuentes's successful motion for acquittal on the aggravated murder charge. As such, Petitioner argues his guilty plea was not voluntary, knowing, and intelligent, because had counsel provided effective advise, Petitioner would have proceeded to trial on all the charges against him.

The PCR trial judge found Petitioner's claims not credible. Instead, the judge found trial counsel did adequately advise Petitioner of the elements of the charges against him, the affirmative defenses available, and the likelihood of a conviction on those charges. These findings were more than reasonably supported by sufficient evidence in the record before the PCR court.

11 - FINDINGS AND RECOMMENDATION -

The PCR court's conclusion that Petitioner received constitutionally effective assistance was not based on an unreasonable determination of the facts in light of the evidence presented and was not contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas corpus relief.[1]

## II. Request for Evidentiary Hearing

In the alternative to a finding that Petitioner is entitled to relief, Petitioner seeks an evidentiary hearing to receive testimony concerning whether counsel actually advised Petitioner on the availability of the statutory affirmative defense to Felony Murder. Evidentiary hearings in § 2254 habeas corpus proceedings are restricted by 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
> (A)    The claim relies on -
>
> (I)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[1] Having found counsel's performance was not deficient, this court need not address prejudice. *See Strickland*, 466 U.S. at 697 (noting that courts may consider either prong of the test first and need not address both if the petitioner fails one).

12 - FINDINGS AND RECOMMENDATION -

Under the opening clause of this section, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

Any additional testimony Petitioner seeks to adduce in an evidentiary hearing before this court could and should have been developed in the PCR proceeding. The PCR trial judge did not place any restrictions or limitations on Petitioner's ability to do so. The fact that the state PCR judge accorded a critical part of Petitioner's evidence, *i.e.*, the taped meeting with Petitioner's brother and trial counsel, "no weight," does not equate with a decision not to allow admission of the evidence; the trial judge considered it and concluded it was not relevant to his decision. Accordingly, Petitioner's request for an alternative evidentiary hearing should be denied.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus and Alternative Request for Evidentiary Hearing should be DENIED, and a judgment of DISMISSAL should be entered.

## SCHEDULING

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due September 22, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 8th day of September, 2009.

John V. Acosta
United States Magistrate Judge